O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| REGINA DE CASAS DIAZ, | Case No. 2:17-cv-04216-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

     Plaintiff Regina de Casas Diaz ("Plaintiff") filed a Complaint on June 6, 2017, seeking review of denials of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"). Dkt. No. 1. The parties filed consents to proceed before the undersigned Magistrate Judge. Dkt. Nos. 13, 14. In accordance with the Court's Order Re: Procedures in Social Security Appeal, the parties filed a Joint Stipulation on February 20, 2018, addressing their respective positions. Dkt. No. 20 ("Jt. Stip."). The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter now is ready for decision.

## I.
## BACKGROUND

On July 11 2013, Plaintiff applied for DIB and SSI, alleging disability beginning April 13, 2012. Administrative Record ("AR") 183-86, 187-92. After her application was denied initially (AR 111-15) and on reconsideration (AR 117-21), Plaintiff requested an administrative hearing, which was held on September 30, 2015. AR 35-58. Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"), as did Carmen Roman, a vocational expert. Id.

On October 30, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. AR 9-34. The ALJ found that Plaintiff suffered from the following severe impairments: "mild right carpal tunnel syndrome; labrum tear of the bilateral shoulders; bilateral shoulders tendinitis bursitis; bilateral knee tendinitis/bursitis; degenerative changes of the cervical spine; and degenerative changes of the lumbar spine." Id. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 19. The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: Plaintiff can (1) not climb ladders, ropes or scaffolds; (2) only occasionally perform postural activities; (3) occasionally reach overhead bilaterally; (4) frequently handle bilaterally (including hand controls); and (5) not do work that requires the ability to speak English and must avoid vibration. AR 20. The ALJ concluded that Plaintiff was incapable of performing past relevant work as a kitchen supervisor or short order cook. AR 27. However, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including: small parts assembler (Dictionary of Occupational Titles ("DOT") 929.587-010),

motel cleaner, (DOT 323.687-014), and gluer (DOT 795.687-014). AR 28. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. Id.

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. AR 7-8. On April 4, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6. This action followed.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may

not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

## III.
## DISCUSSION

The parties present one disputed issue: "whether the ALJ sustained his burden at step five of the sequential evaluation?" Jt. Stip. at 4. Plaintiff contends that she lacks the physical and language abilities to perform the occupations identified by the ALJ. Id. at 5. The Commissioner responds that, relying on the VE's testimony, the ALJ properly found that Plaintiff could perform the representative occupations identified at step 5 of the sequential disability evaluation. Id. at 8-9.

### A. Legal Standard

If a claimant establishes that he is unable to perform his past work at step four, the burden shifts to the Commissioner at step five "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 404.1560(g). At step five, the ALJ may rely on the DOT and testimony from a VE to assess a claimant's ability to perform certain jobs in light of his RFC. 20 C.F.R. §§ 404.1566(e); 404.1569; 404.1566(d); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). As part of this process, occupational information provided

by a VE should generally be consistent with the DOT. SSR 00-04, 2000 WL 1898704, at *2 (Dec. 4, 2000).

However, when there is an apparent conflict between the VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict from the VE before relying on the VE to support a determination or decision about whether the claimant is disabled. <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007). In order for a VE's testimony to be fairly characterized as in conflict with the DOT, the conflict must be "obvious or apparent." <u>Lamear v. Berryhill</u>, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting <u>Gutierrez v. Colvin</u>, 844 F.3d 804, 808 (9th Cir. 2016)); <u>Zavalin v. Colvin</u>, 778 F.3d 842, 845-46 (9th Cir. 2007) (noting that "when there is an apparent conflict between the [VE's] testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear to be more than the claimant can handle – the ALJ is required to reconcile the inconsistency); <u>see also</u> SSR 00–4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE or [vocational specialist 'VS'] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.").

**B.   <u>Analysis</u>**

    1. <u>Reaching Limitation</u>

Plaintiff argues that the DOT descriptions of all of the jobs identified by the VE conflict with the limitations contained in Plaintiff's RFC regarding her reaching limitation. Jt. Stip. at 9-14. Specifically, Plaintiff argues that Plaintiff's limitation to "occasional" overhead reaching conflicts with the descriptions of all three occupations the ALJ determined Plaintiff could perform, which

5

require "frequent" reaching. Id. at 9. She further argues that the ALJ failed to resolve an obvious conflict between her RFC and the DOT descriptions for the representative occupations. Id. at 10.

The Ninth Circuit has recently decided two cases involving claims that an ALJ failed to reconcile "obvious and apparent" conflicts between VE testimony and DOT descriptions. In Gutierrez, the court held that the ALJ, who found that the plaintiff had an RFC that limited lifting above the shoulder, "did not err by not asking the [VE] more specific questions regarding a claimant's ability to reach overhead as part of a cashier's job." 844 F.3d at 806-07. The court found no obvious or apparent conflict between the DOT's description of a cashier's responsibilities and the RFC's limitation, noting "not every job requires the ability to reach overhead," and found, as "anyone who's made a trip to the corner grocery story" knows, bi-lateral overhead reaching is not a likely or foreseeable part of cashiering duties. Id. at 808.

By contrast, in Lamear, the Ninth Circuit held that an ALJ erred in not questioning a VE about a conflict between a claimant's limitations and the DOT descriptions. 865 F.3d at 1205-06. The ALJ had found that the claimant could only occasionally "handle, finger and feel with the left hand." Id. at 1205. The ALJ accepted, without further questioning, a VE's opinion that the claimant could perform work which, under the DOT descriptions required, workers to "'frequently' engage in handling, fingering, and reaching." Id. The DOT was silent as to whether such actions required both hands. Id. The court concluded that the descriptions "strongly suggest[ed] that it is likely and foreseeable" that requirements of the occupations conflicted with the RFC, requiring evidence to justify or explain the apparent inconsistency. Id. at 1206-06. The court in Lamear reiterated that the "'requirement for an ALJ to ask follow up questions is fact-dependent.'" 865 F.3d at 1205 (quoting Gutierrez, 844 F.3d at 808).

However, the court instructed that an ALJ "should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." Id. The court concluded that when a conflict is found, if the record, the applicable DOT, or "common experience" do not reconcile the conflict, the error is not harmless. Id. at 1206.

Here, the ALJ did ask the VE to note any deviation between his opinion testimony and the DOT. AR 54. However, "[t]he ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT." Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014) (cited approvingly in Lamear, 865 F.3d at 1205 n.3). In fact, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency. Zavalin, 778 F.3d at 846.

The DOT descriptions of small parts assembler, motel cleaner, and gluer each state that reaching may be frequent, that is, from one-third to two-thirds of the time. DOT 929.587-010, 323.687-014, and 795.687-014. At the administrative hearing, the VE testified that a person limited to occasional bilateral overhead reaching could perform these occupations. AR 55-56. The reaching limitation was included in Plaintiff's RFC. AR 20. The Court finds that this limitation is at odds with the DOT descriptions and what common experience would dictate the work of a motel cleaner.[1]

---

[1] Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.). DOT 323.687-014.

In addition to the DOT's reference to frequent reaching, the tasks described include tasks for which "overhead work" appears reasonably likely and foreseeable to occur. For a motel cleaner, overhead work seems reasonably likely and foreseeable in connection with frequent placing of linens and towels in overhead storage, overhead dusting, and cleaning of raised fixtures, mirrors, and windows, as well as the DOT's reference to "hang[ing] drapes." See DOT 323.687-014.

Although the DOT description does not specify the direction of the reaching and does not expressly require "overhead" reaching, the Court finds that the ALJ was faced with an apparent conflict between the VE's testimony and tasks that are "essential, integral, or expected" to be performed by a motel cleaner. Gutierrez, 844 F.3d at 808. Having found that a conflict was obvious or apparent, the Court finds that the ALJ erred in not inquiring further of the VE to clarify the conflict with respect to this occupation.

However, the Court finds no obvious or apparent conflict between the VE's testimony and the DOT descriptions for small parts assembler[2] and gluer[3]

---

[2] Couples and packages nuts and bolts: Screws nut on bolt by hand and holds nut in chuck of nut-turning machine that spins and tightens nut on bolt. Weighs or counts specified amounts of nuts and bolts, and records number of units on production form. Pushes box or carton along bench or onto conveyor. May tie long bolts into bundles, using wire. May feed nuts and bolts into hopper of machine that automatically couples and packages nuts and bolts. DOT 929.587-010.

[3] Glues material such as paper, cloth, leather, wood, metal, glass, rubber, or plastic together, following specified procedures: Applies adhesive to surface of material by brushing, spraying, dipping, rolling, holding material against rotating saturated brush, or feeding part between saturated rollers. Presses glued materials together manually, presses material with hand roller, or clamps materials in fixture to bond material together and set glue. May perform limited assembly of preglued material. May trim excess material from cemented parts. May wipe surplus adhesive from seams, using cloth or sponge. May visually inspect completed work. May be designated according to article glued as Arrow-Point Attacher (toy-sport equip.); Gasket Attacher (machinery mfg.); Nock Applier (toy-sport equip.); Pad Attacher

with respect to overhead reaching. Although the DOT descriptions reference "frequent reaching," as the Ninth Circuit has held, "not every job that involves reaching involves reaching overhead." Gutierrez, 844 F.3d at 808. Nothing in the DOT descriptions refer to activities that appear to involve overhead work, let alone frequent overhead work. The ALJ did not err in not inquiring further.

Thus, the Court finds that the ALJ erred in not reconciling the apparent conflict between the VE's testimony and the DOT description for motel cleaner with respect to overhead reaching, but did not err on that issue with respect to the occupations of gluer and small parts assembler. Because the Court finds below that the ALJ also erred with respect to the language limitation, and as that error affects all three occupations, a harmless error analysis solely as to the issue of reaching/motel cleaner is unnecessary.

2. Language Limitation

Plaintiff argues that the ALJ erred in failing to resolve the conflict between Plaintiff's inability to speak English and the DOT's language requirement for the three jobs identified by the VE. Jt. Stip. at 7-8. The Commissioner argues that the ALJ properly relied on the VE's testimony because: (1) Plaintiff's past work demonstrates her ability to communicate well in her native language and could extend that ability to future work; (2) Plaintiff's language limitation is tangential to her alleged disabilities; and (3) the VE was clearly aware of the language limitation when considering representative occupations Plaintiff could perform. Id. at 14-18.

The Commissioner's first argument, that past work shows Plaintiff's ability to perform future work despite language limitations, has been rejected

---

(any industry); Sample Mounter (any industry); or according to gluing method used as Adhesive Sprayer (any industry). May be designated: Box Coverer, Hand (paper goods); Glue Spreader (furniture); Paper-Cone Maker (electron. comp.); Rubber Attacher (toy-sport equip.). DOT 795.687-014.

in other cases. See, e.g., Mora v. Astrue, 2008 WL 5076450, at *4 (C.D. Cal. Dec. 1, 2008) (finding that Commissioner's "conclusory statement" that plaintiff had worked as maid in past showed that she could perform very similar job despite illiteracy "is not persuasive evidence to support a deviation from a DOT requirement"); see also Obeso v. Colvin, 2015 WL 10692651, at *16 (E.D. Cal. Apr. 20, 2015) ("The Ninth Circuit . . . has already resoundingly rejected the argument that a claimant's previous[] performance of work requiring a higher language level somehow excused the ALJ from explaining how the claimant's language limitations would impact her ability to find and perform a similar job or the requirements of the jobs identified by the VE.") (citing Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

The Commissioner's second argument, that Plaintiff's language limitation is tangential to her physical impairments, ignores the fact that the Commissioner bears the burden at step five of proving that Plaintiff can perform other work existing in substantial numbers in the national economy, given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). Literacy and the ability to communicate in English are part of the calculus when considering education as a vocational factor. 20 C.F.R. §§404.1564(b)(1), (b)(5); 416.964(b)(1), (b)(5). Thus, although literacy or education level is a vocational factor relevant only to the step five inquiry and not to the existence of a disability, Silveira, 204 F.3d at 1261 n.14, the ALJ must "definitively explain" the impact of a claimant's language skills on her ability to find and perform either past relevant work or alternative work. Pinto, 249 F.3d at 848. The Commissioner does not argue that the ALJ provided such an explanation nor does the Court find such explanation in its review of the record.

Lastly, with respect to the Commissioner's third argument, that the VE was implicitly aware of Plaintiff's language limitation and thus presumably

took it into account in identifying the three occupations, the argument misses the point of the ALJ's duty to resolve apparent conflicts. The fact that the VE may have had unexpressed justifications in his mind is precisely the problem; it is the duty of the ALJ to reconcile apparent conflicts by asking questions of the VE to put such justifications on the record. The primary inquiries are whether an obvious or apparent conflict existed between the VE's testimony and the DOT and, if so, whether the ALJ resolved it. See Lamear, 865 F.3d at 1205-06.

At the administrative hearing, the ALJ asked the VE to identify occupations that exist in significant numbers in the national economy that a hypothetical individual with Plaintiff's limitations could perform. AR 54. One such limitation was that there "be no requirement for the ability to speak English." Id. The VE identified three representative occupations such a hypothetical individual could perform: small parts assembler, motel cleaner, and gluer. AR 55-56. Plaintiff's counsel asked the VE whether the occupations require the ability to speak English. AR 57. The VE testified that they did not. Id. In his decision, the ALJ assessed Plaintiff's RFC with a limitation that Plaintiff "cannot do work that requires the ability to speak English." AR 20. The ALJ relied on the VE's testimony and found that Plaintiff could perform the occupations the VE identified at the administrative hearing. AR 28.

Despite the VE's conclusory testimony, each of the occupations the ALJ identified at step five of the sequential evaluation require a language level of 1. See DOT 929.587-010, 323.687-014, and 795.687-014.[4] The language level 1 is

---

[4] The occupations require: the ability to "[r]ecognize meaning of 2,500 (two-or-three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers"; "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses"; and "[s]peak simple sentences, using normal word order, and present and past tenses." DOT 929.587-010, 323.687-014, and 795.687-014.

11

the lowest language development contemplated by the DOT. Castillo v. Comm'r of Soc. Sec., 2016 WL 54387, at *4 (E.D. Cal. Jan. 5, 2016); see also Donahue v. Barnhart, 279 F.3d 441, 445 (7th Cir. 2002) ("basic literacy [defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences] is essential for every job in the economy"). A plain reading of the DOT's language level 1 definition requires language ability more advanced than someone who cannot speak English. Thus, the Court finds this presented an obvious conflict with the limitation that Plaintiff cannot perform work that requires the ability to speak English. See Gutierrez, 844 F.3d at 808 (to constitute a conflict, the difference between the VE's testimony and the DOT's listings must concern DOT requirements which are essential, integral, or expected). The conflict triggered the ALJ's obligation to inquire further. See Lamear, 865 F.3d at 1205.

    The Ninth Circuit has held that "in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847. The Court finds no such explanation in the ALJ's decision nor does the Commissioner cite to such an explanation.

    Numerous cases, particularly post-Gutierrez and post-Lamear, have found error in similar circumstances. See, e.g., Chaoprasrihomkhao v. Berryhill, 2018 WL 287303, at *6 (E.D. Cal. Jan. 4, 2018) (finding error where the VE did not provide an explanation for how a claimant could perform work identified by VE given his limited English); Oliva-Hernandez v. Berryhill, 2017 WL 6403085, at *3-4 (C.D. Cal. Dec. 14, 2017) (finding ALJ erred in failing accepting VE's testimony that a functionally illiterate individual could perform occupations at language level 1); Gomez v. Berryhill, 2017 WL 2676400, at *3 (C.D. Cal. June 21, 2017) ("the VE's testimony that a person with Plaintiff's educational background could perform the job of sewing-machine operator

conflicted with the DOT because that job involves Level 2 language skills . . . [t]his conflict required an explanation.") (internal citation and footnote omitted); Yang v. Berryhill, 2017 WL 5878203, at *6 (E.D. Cal. Nov. 29, 2017) (remanding for failure to resolve conflict between the VE's testimony and the English requirements outlined by the DOT); Obeso, 2015 WL 10692651, at *15-16 (remanding a case where the ALJ found a claimant with limited English could perform occupations at language level 1 based on the VE's testimony and "the ALJ did not offer any explanation for her deviation from the DOT"); Mora, 2008 WL 5076450, at *4 (remanding because "the VE failed to explain the impact Plaintiff's illiteracy has on her ability to perform her prior work and failed to account for the deviation from the Language Level 1 requirement set forth in the DOT for the job of a hotel maid."); but see Herrera v. Colvin, 2014 WL 3572227, at *9-10 (C.D. Cal. July 21, 2014) (decided before Gutierrez and Lamear); Landeros v. Astrue, 2012 WL 2700384, at *6 (C.D. Cal. July 6, 2012) (same). The Court agrees with the post-Gutierrez and post-Lamear cases finding error in this circumstances.

The Commissioner suggests that further inquiry was not warranted as Plaintiff's counsel asked the VE whether the representative occupations could be performed without speaking English, and the VE confirmed they could. Jt. Stip. at 15 (citing AR 55-57). However, the VE's one-word response does not constitute an explanation. See Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error where "ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT, and did not point to any evidence in the record other than the VE's sparse testimony for the deviation").

The Commissioner also asserts that "by Plaintiff's logic, she would be unable to perform *any* occupation whatsoever because every job in the DOT would require some ability to speak English." Jt. Stip. at 15. The assertion misconstrues the nature of Plaintiff's argument and the nature of the inquiry. A

13

claimant bears the burden of showing disability at steps one through four of the sequential evaluation. However, if, after step four, it is found that the claimant has met her burden at each step and has shown that she is unable to perform her past relevant work, a limited burden shifts to the Commissioner to show that jobs exist in significant numbers in the national economy that Plaintiff can perform, given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the ALJ seeks to meet that burden by relying upon testimony from a VE about jobs that the claimant can perform which appears to conflict with the DOT descriptions of those jobs, the ALJ must elicit satisfactory testimony reconciling that conflict. The ALJ here did not do so.

In light of the ALJ's failure to resolve the conflict between the VE's testimony and the language requirements outlined by the DOT, the ALJ did not apply the proper legal standards in this. This error is not harmless since no additional jobs were identified. Accordingly, the case must be remanded so that the record can be developed in this area.

### C. Remand for Further Proceedings Is Appropriate

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

However, remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. Bunnell v. Barnhart, 336

F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to further inquire of the VE regarding the apparent conflicts identified herein and conduct such other proceedings as are warranted.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: March 07, 2018

_____
JOHN D. EARLY
United States Magistrate Judge